

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 20, 2018**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DAVID STUART CRYMES, | § | CASE NO. 16-10206-rlj13 |
| | § | |
| Debtor. | § | |

---

| | | |
|---|---|---|
| DAVID STUART CRYMES, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | ADVERSARY NO. 18-01000-rlj |
| | § | |
| OCWEN LOAN SERVICING, LLC as | § | |
| SERVICING AGENT for U.S. BANK, | § | |
| N.A., as TRUSTEE for CITIGROUP | § | |
| MORTGAGE LOAN TRUST, INC. | § | |
| SERIES 2005-9, ITS SUCCESSORS | § | |
| AND ASSIGNS, | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION</u>

1

The Court addresses the motion to dismiss of the defendants, Ocwen Loan Servicing, LLC (Ocwen), U.S. Bank, N.A. (U.S. Bank), and Citigroup Mortgage Loan Trust, Inc. Series 2005-9 (Citigroup) (collectively, Defendants). The plaintiff (and debtor), David Crymes, filed his complaint on January 2, 2018, alleging multiple causes of action and requesting a determination of the validity, priority, or extent of U.S. Bank's lien and a declaratory judgment.[1] This suit is related to Crymes's chapter 13 bankruptcy case and, in particular, to U.S. Bank's motion for relief from stay[2] filed in Crymes's bankruptcy case after Crymes's chapter 13 plan was confirmed.[3]

The Court has jurisdiction over this proceeding under 28 U.S.C § 1334(b), and the matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), (G), and (K).

Crymes filed chapter 13 bankruptcy on September 2, 2016.[4] He filed his Schedules A/B through J on September 16, 2016[5] and later amended Schedule A/B, which relates to his assets and liabilities, on November 28, 2016.[6] By his amended Schedule A/B, Crymes lists his homestead as 845 Sayles Blvd., Abilene, Texas and estimates its value at $426,754.81.[7] On Schedule D, Crymes lists Ocwen as holding a secured claim in the same amount and secured by the homestead property.[8] Crymes reflects $127,488.53 as a mortgage arrearage owed to Ocwen but states that such "amount is disputed in the state district court."[9]

---

[1] Doc. No. 1. All "Doc. No." references herein are to the present adversary proceeding, unless otherwise indicated.
[2] Case No. 16-10206, Doc. Nos. 35, 37.
[3] Case No. 16-10206, Doc. No. 30.
[4] Case No. 16-10206, Doc. No. 1.
[5] Case No. 16-10206, Doc. No. 8.
[6] Case No. 16-10206, Doc. No. 20.
[7] *Id.* at 3.
[8] Case No. 16-10206, Doc. No. 8 at 14.
[9] *Id.* at 15.

Crymes filed his chapter 13 plan and motion for valuation on September 16, 2016.[10] Ocwen objected to confirmation of Crymes's chapter 13 plan, contending it was not feasible given Crymes's inability to pay the arrears owed to Ocwen.[11] But Ocwen (or its counsel) did not appear at the confirmation hearing and the plan was confirmed over Ocwen's objection.[12] The plan called for direct payments by Crymes on the mortgage debt—and thus not made through the plan from the plan payments—but no payments on the mortgage arrears.[13]

Six months after confirmation of Crymes's chapter 13 plan, on June 23, 2017, U.S. Bank filed its motions for relief from stay.[14] Crymes opposed the motions[15]; however, the co-debtor stay as to his wife, Sabina Crymes, was lifted by default by order of August 29, 2017.[16] Following several joint requests for continuances on the stay motion, Crymes filed this suit on January 2, 2018.[17] An order abating the hearing on the stay motion was entered on February 7, 2018.[18]

### *The Complaint*

Crymes's original complaint generally describes the 2001 Amendments to Article 9 of the Uniform Commercial Code and the "robo-signing" scandal that impacted the Mortgage Electronic Registration System (MERS) that, in turn, resulted in an extensive investigation of such conduct in 2010.[19] Crymes alleges that his mortgage was affected by this "scandal" and

---

[10] Case No. 16-10206, Doc. No. 12.
[11] Case No. 16-10206, Doc. No. 16 at 2.
[12] *See* Case No. 16-10206, Doc. No. 30.
[13] *Id.* at 3.
[14] Case No. 16-10206, Doc. Nos. 35, 36, 37. Doc. No. 35 seeks to lift the stay as to the debtor, David Crymes, and Doc. No. 36 seeks to lift the stay as to the co-debtor, Sabina Crymes, who did not join in this bankruptcy. Doc. No. 37 is an "Affidavit in Support of Motion for Relief from Automatic Stay and Co-debtor Stay" signed by Shilundra Lidell, Contract Management Coordinator for Ocwen Loan Servicing, LLC.
[15] Case No. 16-10206, Doc. No. 39.
[16] Case No. 16-10206, Doc. No. 42.
[17] Doc. No. 1.
[18] Case No. 16-10206, Doc. No. 53.
[19] Doc. No. 1 at 6–15.

claims the following against Defendants: (1) a violation of 18 U.S.C. § 1962(c), the RICO

Statute; (2) an objection to the motion for relief from stay for lack of standing; (3) a right to

declaratory judgment declaring the mortgage lien of Defendants void under 11 U.S.C. § 506(d);

and (4) a right to judgment for sanctions and damages under 11 U.S.C. § 105(a) against

Defendants.[20]  In response, Defendants filed their motion to dismiss on February 23, 2018.[21]

Crymes then filed an amended complaint.[22]  The amended complaint is practically

identical in substance to the original complaint; attached to it, however, are two exhibits.  Exhibit

1 is a Consent Judgment, referenced by the amended complaint, signed by the District Judge of

the United States District Court for the District of Columbia on February 26, 2014.[23]  Exhibit 2 is

entitled "Explanation of Securitization" that Crymes posits "explains the securitization process in

greater detail."[24]  Neither the original complaint nor its amended version explains how the

mortgage scandal, the judgment, or the securitization process affects the Crymes loan and

mortgage.

### *The Motion to Dismiss*

Defendants' motion to dismiss alleges that Crymes fails to state a claim upon which relief

may be granted, and thus dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of

---

[20] *Id.* at 15–22. All "§" references contained herein are to Title 11 of the United States Code, unless otherwise indicated.
[21] Doc. No. 14.  On a procedural note, Crymes filed a motion for default judgment on March 16, 2018, claiming that Defendants failed to properly respond to the complaint, despite having filed a motion to dismiss almost one-month prior.  Doc. No. 20.  Defendants opposed the motion for default judgment, countering that a motion to dismiss is an appropriate responsive-pleading under the Federal Rules of Civil Procedure.  Doc. No. 30.  The Court denied the motion for default judgment on April 2, 2018.  Doc. No. 32.  Prior to the hearing on Defendants' motion to dismiss, however, Crymes also filed an amended complaint.  Doc. No. 29.  In response, Defendants filed a motion to strike, which was rendered moot at the hearing held on March 28, 2018.  Doc. No. 31.  At the March 28 hearing, the Court instructed that it would allow Defendants additional time to respond to the amended complaint, but would otherwise allow the amended complaint despite it being untimely filed.  Defendants subsequently filed a notice with the Court that they would stand on their original motion to dismiss but would also incorporate paragraph 14 of their motion to strike as a supplement to the motion to dismiss.  Doc. No. 34.
[22] Doc. No. 29.
[23] Doc. No. 29 Ex. 1.
[24] Doc. No. 29 at 22, Ex. 2.

Civil Procedure.[25]  Specifically, the motion states that the Court should dismiss Crymes's complaint for the following reasons: (1) Crymes has not alleged facts to support a violation of the RICO Act; (2) Crymes has failed to state a claim upon which relief may be granted for his "lack of standing"-to-foreclose claim ; (3) Section 506(d)(2) specifically excepts Defendants' asserted lien from Crymes's avoidance claim; and (4) Crymes has no claim for damages or sanctions.[26]

Attached as exhibits to the motion to dismiss are Defendants' motion for relief from stay (and its related attachments—the note, deed of trust, and assignments) and the affidavit of Shilundra Lidell in support of the motion.[27]

For a Rule 12(b)(6) motion to dismiss, the court typically considers the pleadings alone and thus not extrinsic material.  *See* Fed. R. Civ. P. 12(d).  But when items are attached to the motion to dismiss that are central to the plaintiff's claim, the court may properly consider such documents.  *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *see also Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 205 (5th Cir. 2007) ("But because the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss.").  Here, Defendants attached the relevant deed of trust and assignment documents to its motion to dismiss.[28]  The Court may properly consider these documents in ruling on the motion

---

[25] Doc. No. 14 at 1.  Rule 12(b) is made applicable to the instant adversary proceeding by Bankruptcy Rule 7012(b).
[26] *Id.* at 4–13.
[27] *Id.* Ex. A.
[28] *Id.*

to dismiss because they are referred to several times in Crymes's complaint and are central to his claim. *See Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 247 n.4 (5th Cir. 2017).

## Analysis

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted tests the formal sufficiency of the plaintiff's statement of its claim for relief. A Rule 12(b)(6) motion is appropriate if the plaintiff has not provided fair notice of his claim with factual allegations that, when accepted as true, are plausible and not merely speculative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Motions to dismiss for failure to state a claim are generally viewed with disfavor. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

### Count I–RICO Violation

"RICO creates a civil cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962.'" *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000) (quoting *Beck v. Prupis*, 529 U.S. 494, 495 (2000)). To state a claim under 18 U.S.C. § 1962, there must be: "(1) a *person* who engages in (2) a *pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an *enterprise*." *Id.* (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)) (emphasis in original). Crymes asserts that Defendants have violated 18 U.S.C. § 1962(c).[29]

By the amended complaint, Crymes alleges that Defendants "comprise an 'enterprise' or 'enterprises' as defined in 18 U.S.C. §1961(4)."[30] An enterprise "includes any individual,

[29] "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).
[30] Doc. No. 29 at 15.

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *see also Boyle v. United States*, 556 U.S. 938, 944 (2009). The Supreme Court has stated that by its definition, an enterprise is intended to be broad and reaches "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle*, 556 U.S. at 944 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)) (internal quotation omitted). Crymes identifies Defendants as an enterprise.

Notably absent, however, is any allegation that a specific *person* engaged in conduct that constitutes racketeering activity or that such person has an existence apart from the enterprise. *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 583–84 (5th Cir. 1992) (affirming dismissal of the plaintiff's RICO claim where, in part, no allegation was made that an identifiable person engaged in the alleged predicate acts).[31] The complaint identifies "DocX CEO Lorraine Brown" as "presently serving a five (5) year prison sentence for mail and wire fraud" and suggests that Defendants subsequently carried on the same pattern of activity to establish standing to foreclose.[32] Crymes does not, however, explain how Lorraine Brown was directly or indirectly involved, if at all, in the assignments, pooling, or securitization of his deed of trust. The Court thus cannot so decide that Lorraine Brown is the RICO person.

Nor will the Court decide that Defendants are the RICO person(s), despite Crymes's conclusory allegation that "the enterprise or enterprises have an existence apart from and beyond the racketeering activity complained of in this action."[33] "For purposes of § 1962(c) . . . , the plaintiff must demonstrate not only that the enterprise is distinct from the series of predicate acts

---

[31] "'[P]erson' includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).
[32] Doc. No. 29 at 16.
[33] *Id.* at 15.

constituting racketeering activity, but also that the RICO 'person' who commits the predicate acts is distinct from the enterprise." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). "If the defendant is a legal entity, the plaintiffs must do more than merely establish that the corporation, through its agents, committed the predicate acts in the conduct of its own business." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). The complaint is devoid of any such allegation. In fact, it appears that the actions complained of by Crymes were consistent with the conduct of Defendants' business.

Also, for the alleged acts of racketeering, Crymes asserts that the conduct of Defendants constituted mail and wire fraud under 18 U.S.C. §§ 1341, 1343.[34] Crymes is required to plead that Defendants engaged in a pattern of racketeering activity. 18 U.S.C § 1961(5) (defining a pattern of racketeering activity as at least two acts of racketeering activity, of which includes both mail and wire fraud); *see Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003) ("A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity.") (internal quotation omitted). The Court will not substantively address the alleged pattern of racketeering because, based solely on the pleadings, the Court is unable to determine either an existence of any activity or a pattern. But as the alleged acts are

---

[34]    Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, . . . places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, . . . shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1341.

    Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, . . . transmits or causes to be transmitted by means of wire, . . . in interstate or foreign commerce, any writings, . . . for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

based on fraud, the Court addresses the complaint's compliance with Rule 9(b) of the Federal Rules of Civil Procedure.[35]

Rule 9(b) provides that the party alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires a showing of the "who, what, when, where, and how of the alleged fraud." *United States* ex rel. *Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) (quoting *United States* ex rel. *Steury v. Cardinal Health, Inc. (Steury I)*, 625 F.3d 262, 266 (5th Cir. 2010)) (internal quotations omitted). The defendant's state of mind, however, may be alleged generally. *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 439 (5th Cir. 1994); Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

"The amount of particularity required for pleading fraud differs from case to case." *Chau v. Aviva Life & Annuity Co.*, No. 3:09-CV-2305-B, 2011 WL 1990446, at *3 (N.D. Tex. May 20, 2011) (citations omitted). When suing multiple defendants, the "plaintiff is obligated to distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud." *Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 915 (N.D. Tex. 1998) (quoting *In re Silicon Graphics, Inc. Secs. Litig.*, 970 F. Supp. 746, 752 (N.D. Cal. 1997)) (internal quotations omitted).

Crymes, in a conclusory way, identifies the required predicate acts as instances of mail and wire fraud which, as correctly briefed by Defendants, raises the heightened pleading standard of Rule 9(b). *See generally Miller v. CitiMortg., Inc.*, 970 F. Supp. 2d 568, 582 (N.D. Tex. 2013) (indicating that fraud claims must be stated with particularity so as to comply with Rule 9(b)). The Court agrees with Defendants that Crymes has not met this burden. The

---

[35] Rule 9 is made applicable to the instant adversary proceeding by Bankruptcy Rule 7009.

complaint simply recites the language of the statutes relied on to suggest the existence of a predicate act. This is not enough. Crymes fails to identify who engaged in mail or wire fraud, which statements made by the unidentified entity were fraudulent, when and where such statements were allegedly made, and why the statements were fraudulent. The bare assertions that "surrogate signed endorsements"[36] were used to establish standing to foreclose do not meet the requirements of Rule 9(b).

Crymes has failed to sufficiently plead a cause of action under 18 U.S.C. § 1962(c). This claim will be dismissed.

### Count II–Lack of Standing

Crymes asserts that "[t]he documents offered in support of the Respondents' Motion for Relief From Stay fail to establish standing of the Respondent OCWEN and Respondent U.S. Bank, N.A. in this federal court."[37] Crymes first challenges whether Defendants are the real parties in interest entitled to bring an action for relief from the automatic stay.[38] He then challenges Defendants' constitutional standing as required by Article III, § 2 of the United States Constitution.[39] Defendants respond by asserting that the instruments, which are the assignments at issue here, reflect that U.S. Bank is the last entity to which the debt and mortgage were transferred.[40] As such, both U.S. Bank and Ocwen, as servicer, are permitted to initiate foreclosure proceedings against Crymes under Texas law.[41] Defendants alternatively suggest that even if the assignments were defective, the mortgage is rendered "voidable, not void."[42]

---

[36] A term used throughout the amended complaint. Doc. No. 29.
[37] *Id.* at 17.
[38] *Id.*
[39] *Id.* at 18.
[40] Doc. No. 14 at 7.
[41] *Id.*
[42] *Id.* at 8 (citing *Lamell v. OneWest Bank, FSB*, 485 S.W.3d 53, 61–62 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *Reinagel v. Deutsche Bank Nat'l Tr. Co.*, 735 F.3d 220, 225 (5th Cir. 2013)).

And Defendants further counter *that Crymes lacks standing* to challenge the authenticity of the assignments because he was not a party to the assignments.[43]

Real-party-in-interest issues arise by application of Rule 17 of the Federal Rules of Civil Procedure, made applicable in bankruptcy by Bankruptcy Rule 7017, save for one exception not relevant here.  Rule 17(a)(1)(F) states, "An action must be prosecuted in the name of the real party in interest.  The following may sue in their own names without joining the person for whose benefit the action is brought: a party with whom or in whose name a contract has been made for another's benefit."  The concept of a real party in interest is narrower than the concept of standing.  *Collier on Bankruptcy* ¶ 7017.02 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("A real party in interest has standing, but not everyone with standing is a real party in interest.").  Real party in interest issues are a "prudential limitation" on the justiciability of the action before the court.  *See School Bd. Of Avoyelles Par. v. U.S. Dep't of Interior*, 647 F.3d 570, 577 (5th Cir. 2011).  A real party in interest is the one that holds a substantive right sought to be enforced.  *Spicer*, 751 F.3d at 362.  Whether a person is the real party in interest, with respect to a particular claim, is determined by state and federal substantive law.  *BAC Home Loans Servicing, LP v. Tex. Realty Holdings, LLC*, 901 F. Supp. 2d 884, 907 (S.D. Tex. 2012).  A plain reading of the rule requires the conclusion that challenges to the real party in interest are held by the party defending the action.  Fed. R. Civ. P. 17(a) ("An action must be *prosecuted . . .*") (emphasis added); *see Prosecute*, Black's Law Dictionary (10th ed. 2014) ("To commence and carry out (a legal action)").

Here, Crymes's challenge to Defendants' standing to seek stay relief is misguided.  As the plaintiff here, Crymes cannot argue that Defendants are not the real parties in interest when

---

[43] *Id.* at 9 (citing *Morlock, L.L.C. v. Bank of N.Y.*, 448 S.W.3d 514, 517 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)).

they are the parties being sued. Crymes's charge makes no sense in this context. And Crymes does not contend that he raised standing as an issue in response to Defendants' motion for relief from stay. *See* Fed. R. Bankr. P. 9014(c) (stating that Bankruptcy Rule 7017 applies in contested matters such as motions for relief from the automatic stay). Crymes does not identify another entity as the real party in interest, and the documents attached to the pleadings reflect that Defendants are the last assignees. Based on the pleadings alone, Crymes's allegation that Defendants are not the real parties in interest must be dismissed.

Crymes also challenges Defendants' constitutional standing to seek relief from the automatic stay in his bankruptcy. Constitutional standing is satisfied by (1) an "injury in fact"; (2) causation; and (3) redressability. *See generally Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (describing the doctrine of constitutional standing and its requirements). These requirements ensure that the plaintiff has a sufficient stake in the outcome of the case to be adverse to the defending party. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). Defendants contend *that Crymes* lacks standing to challenge the assignments at issue because he was not a party to those assignments. *See Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995) ("A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts.") (internal quotation and citation omitted).

Defendants submit that Crymes, as the mortgagor, lacks standing to challenge assignments, to which he was not a party, of the deed of trust lien that secures the debt. The Court agrees that, under Texas law and in this circuit, Crymes's standing is limited. *See, e.g.*, *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780–81 (5th Cir. 2015) ("Borrowers have limited standing to challenge their lenders' assignments of their promissory notes and DOTs. . . .

(obligors) have standing to challenge . . . (assignee) efforts to foreclose if the . . . claim would render the assignment void rather than voidable."); *Ericson v. Resurgent Capital Servs., L.P.*, 622 F. App'x 342, 344 (5th Cir. 2015) ("[U]nder Texas law, challenges to facially valid assignments 'for want of authority' may only be brought by the defrauded assignor."); *Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 F. App'x 833, 835 (5th Cir. 2014) ("Under Texas law, a bank in possession of a note indorsed in blank is entitled to collect on it. The Texas statutory definition of 'holder' includes someone who is in possession of a note payable to bearer."). The alleged facts here are strikingly similar to those in the cases just cited: borrowers execute notes and deeds of trust in favor of original lenders; original lenders assign the deeds of trust to third party entities; borrowers subsequently complain that the assignments are invalid when foreclosure proceedings are initiated. Ameriquest Mortgage Company, the original lender in this transaction, could assign the note and the deed of trust. A fabricated or forged endorsement affixed to an assignment renders the assignment voidable, but the cause of action to set aside the assignment on such grounds belongs to the grantor, not a third party who lacks standing to challenge the voidable defect. *Lamell v. OneWest Bank, FSB*, 485 S.W.3d 53, 61–62 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). *But see Sevilla v. Fed. Nat'l Mortg. Ass'n*, No. 3:15-CV-3594-B, 2017 WL 565180, at *3 (N.D. Tex. Feb. 13, 2017) ("An allegation of forgery, on the other hand, is an argument that would render the assignment void.") (citing *Vazquez v. Deutsche Bank Nat'l Tr. Co.*, 441 S.W.3d 783, 787 (Tex. App.—Houston [1st Dist.] 2014, no pet.)).

Crymes alleges that the signatures on the assignments of deed of trust were done in anticipation of litigation and not at the time the transactions actually occurred. He says that the corporate seal affixed to the first assignment of July 1, 2005 is fake, and that the second

assignment of October 26, 2011 was signed by a "robo-signer."[44]  Despite Crymes's allegation of some nationwide scheme, of which he implies he is a victim, the Court finds that Crymes lacks standing to challenge these facially valid assignments.  Standing to challenge the validity of the assignments is vested in the parties to the assignment, which here include U.S. Bank.  Crymes does not allege that Citigroup (or U.S. Bank as its trustee) is *not* the present holder of the note and mortgage.  He alleges the items mentioned above—the suspicious signature, seal, and robo-signer—but does not state how such matters, if true, affect him or his obligation to pay the debt he incurred on the loan.  Crymes asserts no plausible argument that challenges U.S. Bank's or Citigroup's standing to prosecute the stay motion.  The Court will therefore dismiss Crymes's claim that Defendants lack standing to seek relief from the automatic stay to initiate foreclosure proceedings against his property.

### Count III–Void Lien Under § 506(d)

Crymes seeks a declaratory judgment that the lien securing Defendants' claim is void under § 506(d).[45]  In support of this position, Crymes simply states that the enumerated exceptions of § 506(d) do not apply.[46]  Though no authority is cited for this proposition, Crymes requests that the Court declare Defendants' lien void.  Relatedly, Crymes also asserts that Defendants' lien is void because the loan was "pooled with numerous other loans, . . . [was] securitized, [and] lost its character as a mortgage."[47]  Defendants counter by arguing that their

---

[44] Doc. No. 29 at 5–6.

[45]        To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
           (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
           (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

§ 506(d).

[46] Doc. No. 29 at 22.

[47] *Id.*

lien is not void because it is valid and enforceable; Crymes's complaint does not disprove Defendants' argument.[48]

Defendants argue that Crymes cannot void the mortgage simply by Defendants' failure to file a proof of claim because the exception found in § 506(d)(2) applies.[49]  It is unclear if Crymes is requesting lien avoidance under § 506(d) because of Defendants' failure to file a proof of claim.  Nonetheless, the Court will address Defendants' contention that § 506(d)(2) applies to preserve its lien because Crymes states, "None of the exceptions to 11 U.S.C. 506(d) apply."[50]

In *Dewsnup v. Timm*, the Supreme Court decided that a secured creditor's lien could be voided to the extent the claim itself was not allowed.  502 U.S. 410, 415–16 (1992) (writing in agreement with the position as argued by the respondents that this reading of § 506(d)(2) "gives the provision the simple and sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed.").  Otherwise, absent application of another provision in the Code, liens in bankruptcy pass through the proceeding unaffected.  *Id.* at 418 (citing *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991); *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991)).  Here, Crymes's reliance on § 506(d) to void Defendants' lien is misguided.

The *Dewsnup* holding is ostensibly limited to cases filed under chapter 7.  *See id.* at 416–17 ("Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day."); *Collier* ¶ 506.06[1][c].  This is because the Supreme Court in *Dewsnup* limited its analysis to the facts before it on review and because lien adjustment is made

---

[48] Doc. No. 14 at 10–11.
[49] *Id.* at 11.
[50] Doc. No. 29 at 22.

available by other provisions in the Code that apply to reorganization.  *See* §§ 1322(b)(2), 1325(a)(5), and 1327(c).[51]  Although no mention is made in the amended complaint, it is conceivable that Crymes is requesting that the Court void Defendants' lien because the claim should be disallowed.  For that reason, the Court will not construe the applicability of the various lien-modification provisions of chapter 13 as Crymes does not seek to modify Defendants' lien as part of his plan.[52]

Rather, the Court addresses Crymes's contention that the enumerated exceptions in § 506(d) do not apply to preserve Defendants' lien.  The first exception, contained in § 506(d)(1), addresses claims disallowed under § 502(b)(5) or (e), which relate to unmatured domestic support obligations and contingent co-debtor claims, neither of which applies here.  The second exception, found in § 506(d)(2), applies to a secured claim that has not been affirmatively allowed because proof of such claim has not been filed under § 501.  Defendants invoke the (d)(2) exception as they have not filed a proof of claim.[53]

Defendants are correct that Crymes cannot void their lien solely on the basis that they did not file a proof of claim in his bankruptcy.  Section 506(d)(2) codifies the previously mentioned holding of *Dewsnup* that liens pass through bankruptcy unaffected unless the claim or a portion of the claim is disallowed.  *See Dewsnup*, 502 U.S. at 418; *see also Acceptance Loan Co. v. S. White Transp., Inc. (In re S. White Transp., Inc.)*, 725 F.3d 494, 496 (5th Cir. 2013) ("It is a longstanding rule in bankruptcy that a secured creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid may ignore the bankruptcy

---

[51] Although other provisions of the Code allow for avoidance or modification of liens in reorganization cases, Crymes filed his petition under chapter 13.

[52] In fact, the plan was confirmed on January 19, 2017, and indicated that the loan would be "paid direct," albeit to a creditor (GMAC Mortgage) that has not made an appearance in this adversary or in the underlying bankruptcy.  Case No. 16-10206, Doc. No. 30.

[53] Doc. No. 14 at 11.  In fact, only one proof of claim was filed in the underlying bankruptcy case, which was filed by the IRS for $617.00. Case No. 16-10206, Cl. No. 1.

proceeding and look to the lien for satisfaction of the debt.") (quoting *Sun Fin. Co. v. Howard (In re Howard)*, 972 F.2d 639, 641 (5th Cir. 1992) (internal quotations omitted). Defendants are under no requirement to participate in the bankruptcy and may simply look to the lien on Crymes's real property to satisfy the debt. *See Quintana v. Am. Gen. Home Equity, Inc. (In re Quintana)*, 247 F. App'x 564, 565 (5th Cir. 2007); *IRS v. Taylor (In re Taylor)*, 132 F.3d 256, 260–61 (5th Cir. 1998). Citigroup's claim (through U.S. Bank as trustee) has not been affirmatively allowed or disallowed under § 506. As no claim has been filed, it has not been addressed. Thus the only basis for voiding the deed of trust lien would be Citigroup's failure to file a proof of claim. The exception of (d)(2) prevents avoidance.

The Court dismisses Crymes's cause that Defendants' lien must be avoided under § 506(d).

### Count IV–Sanctions and Damages

Last, Crymes requests that the Court impose monetary sanctions against Defendants for their repeated "filing of false documents in a court of law for the purpose of deceiving the Debtor, the Chapter 13 Trustee, the Creditors, and the Federal Bankruptcy Court."[54] Crymes requests that the Court use its discretionary power granted under § 105(a) to impose such monetary sanctions.[55]

Turning first to the Court's authority to impose sanctions against Defendants, the Court recognizes that § 105 and a bankruptcy court's inherent power permit sanctions against the

---

[54] Doc. No. 29 at 22.

[55] *Id.*

      The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

§ 105(a).

parties for bad faith conduct "not effectively sanctionable pursuant to an existing rule or statute."
*In re Saldana*, 531 B.R. 141, 166 (Bankr. N.D. Tex. 2015) (referencing Fed. R. Civ. P. 11 and 28
U.S.C. § 1927). Such inherent power, however, is not unlimited and should be applied when
necessary to protect and control court proceedings. *See Citizens Bank & Tr. Co. v. Case (In re
Case)*, 937 F.2d 1014, 1023 (5th Cir. 1991); *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*,
894 F.2d 696, 702 (5th Cir. 1990). An award of sanctions may include:

> directives of a nonmonetary nature, an order to pay a penalty into court, or, if
> imposed on motion and warranted for effective deterrence, an order directing
> payment to the movant of some or all of the reasonable attorneys' fees and other
> expenses incurred as a direct result of the violation.

Fed. R. Bankr. P. 9011(c)(2). The sanction imposed is limited to that which will coerce compliance
with the court's orders or will "deter repetition" of the sanctionable conduct in the future. *Id.*; *see
Carroll v. Abide (In re Carroll)*, 850 F.3d 811, 815 (5th Cir. 2017).

Here, Crymes requests the Court impose sanctions against Defendants "as a result of the
Respondent's [*sic*] egregious conduct and filing of false fabricated documents with this court."[56]
Absent from this request, however, is any indication of which documents were fabricated, which
Defendant(s) participated in the alleged egregious conduct, and what specific conduct was
egregious. Unfortunately, Crymes's amended complaint mostly discusses mortgage assignments
on a national level but fails to address the mortgage transaction and subsequent assignment that
occurred here. The Court will not impose sanctions where the alleged sanctionable conduct is
not identified by the pleadings.

Crymes's request for damages is more threadbare than his request for sanctions. As
correctly stated by Defendants, an award of damages requires the plaintiff to prove a
"compensable injury." *2525 Capital Grp. v. Dallas Home for Jewish Aged, Inc.*, No. 3:08-CV-

---

[56] Doc. No. 29 at 22.

1673-L, 2010 WL 2402892, at *7 (N.D. Tex. June 11, 2010) (quoting *Intercontinental Grp. v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 652 (Tex. 2009)). The amended complaint provides no reference to any injury whatsoever. Interestingly, Defendants' response to the motion to dismiss appears to infer that Crymes is requesting, as damages, his attorney's fees.[57] Yet the amended complaint mentions the issue of attorney's fees once, and only in the prayer, and, aside from the section heading, says nothing on the subject of Crymes's entitlement to damages.[58]

The Court will dismiss Crymes's claim that the Court should impose sanctions against Defendants and award him damages. Crymes has failed to plausibly allege his entitlement to damages or that Defendants engaged in sanctionable conduct. This claim will be dismissed.

### Conclusion

The Court grants Defendants' motion to dismiss. Such dismissal disposes of all pending causes of action alleged by Crymes's amended complaint. The adversary proceeding will, therefore, be dismissed.

### End of Memorandum Opinion ###

---

[57] Doc. No. 14 at 12.
[58] Doc. No. 29 at 22–23.